JOHN C. HAVENS et al.

*v.*

THE SEASHORE LAND COMPANY et al.

[Filed November 2d, 1898.]

1. Where a suit abates or becomes defective by the death of a party and is revived by his heirs, it is a continuance of the same suit, and both parties are entitled to the benefit of all former proceedings prior to the abatement.

2. Where a suit abates or becomes defective by the death of a party and is revived by his heirs, they are not bound by proceedings taken after his death, prior to revival.

3. One of the complainants in partition died, and without a revival by his heirs or a suggestion to the court of his death, evidence was taken and the suit brought to a final hearing, and the chancellor rendered an adverse decision without signing or advising a decree.—*Held*, that heirs of the deceased complainant, after an order of revivor under the statute (*Gen. Stat. pp. 2, 3 ? 5, tit. "Abatement"*) and an amendment to the original bill, stating their succession, could only show whether the new party has the representative character imputed to him, and could not introduce evidence to supplement complainants' case.

4. The surviving parties were bound by the decision on which a decree should be entered between them.

5. Where a complainant in partition dies in the progress of the cause and his heirs secure a revival, his widow becomes one of the new complainants, although, as a wife, she was one of the original complainants.

6. Where one of the complainants dies subsequent to a decision on a bill · for partition, the decree should be dated as of the date of the argument.

7. Where, on a bill for partition of two tracts of land, it appeared that all the complainants and defendants are interested in one of the tracts only, and that part of the complainants and defendants are interested in the other, as to the latter tract the bill will be dismissed, but, as to the complainants interested therein, without prejudice.

8. On a bill for partition, if the legal title to the land is put at issue the court of chancery will not proceed to settle such title, but will either dismiss the bill or retain it, to allow the title to be settled in an action at law.

Heard on bill, answer and cross-bill and proofs.

This cause was originally heard by the late Vice-Chancellor Van Fleet on final hearing, and an opinion was filed by him directing the character of decree to be entered. The bill was filed for the partition of two tracts of land known as lots Nos. 4 and 5, in survey No. 6, on a partition map of "Manasquan Beach," in Monmouth county (now Ocean), made in partition proceedings taken in the year 1801, in the Monmouth county court of common pleas. In the bill, which was filed October 7th, 1887, the then complainants claimed to be the owners of the undivided half of both tracts, and alleged that the defendant the Seashore Land Company was the owner of an undivided fourth part of both tracts, and that certain other persons, made defendants, were together the owners of the other undivided fourth part of both tracts. The title of complainants, deduced originally from a survey of the proprietors in 1690, was spread out in the bill, including the deeds and other writings or records upon which it was founded. The defendant the Seashore Land Company answered the bill, setting out, also, its title to the premises, including a deed from one John Curtis to Joseph Lawrence, dated May 31st, 1788, for the one-half of one-seventh part of Squan Beach, the property subsequently partitioned. This deed, if effective, conveyed the legal title to one-half of lots 4 and 5 and conveyed the one-half interest

which complainants claimed.   The land company, who claimed
title to the other one-half interest from other sources, by their
answer (filed March 26th, 1889) asserted exclusive legal title
and ownership to both of the lots and denied to complain-
ants or any of the defendants any title or interest in either
of them.   The defendants Walter N. Marks and others filed
an answer admitting, or not disputing, complainants' title or
their own as set out, and joined in a prayer for partition.   On
August 9th, 1889, John C. Havens, one of the complainants,
died intestate, but although (as hereafter appears) his death was
known to the solicitors of all the parties, no application to re-
vive the suit, or to be made parties, was made in behalf of his
heirs, and the suit was brought to final hearing before Vice-
Chancellor Van Fleet without (so far as appears by the record)
any suggestion to the court of the death of John C. Havens, or
that the suit was defective in parties for this reason.   The pro-
ceedings in the cause subsequent to the death of John C. Havens
were as follows:  Evidence was taken by complainants before a
master on September 28th, 1889, in the presence of solicitors for
all parties, and Edwin H. Havens, a son of John C. Havens,
then testified that his father, John C. Havens, died in August,
1889, and the names of his widow and heirs-at-law were given
by this witness.   On October 26th, 1889, complainants continued
their evidence in the absence of counsel for the land company,
and on February 8th, 1890, the witnesses then examined were
produced and cross-examined.   On February 11th, 1890, com-
plainants filed replications by consent.   On February 10th, 1890,
complainants took an order on the land company, to close their
testimony in sixty days, which time for proofs was on April 21st,
1890, and, on notice and defendants' motion, extended to thirty
days from the latter date.   Defendant's testimony was taken on
May 17th and May 20th, 1890, and on the latter date the cause,
on complainants' motion, was referred to Vice-Chancellor Van
Fleet for hearing and advising decree.   On May 23d, 1890,
complainants suggested on record the marriage of one of the
female defendants, and took an order continuing the proceedings
against her by her married name.   On May 20th, 1890, an order

for leave to file amended answer with cross-bill was made, which answer was filed on the same day. On June 21st, 1890, the complainants' replication to the amended answer was filed, and on June 25th, 1890, an order was made that the testimony taken May 20th, 1890, by defendants should stand as if taken under the amended answer and cross-bill. The cause was subsequently heard and the opinion of the vice-chancellor was filed October 21st, 1890. As appears from this opinion the only dispute between the complainants and the land company related to the title of the land company to the undivided half interest in one of the tracts (No. 4), which interest was claimed under the deed of May 31st, 1788, from John Curtis to Joseph Lawrence, above referred to. The entire dispute between the parties, in the language of the vice-chancellor, " centres in this deed. If it passed the land in controversy the defendants will be entitled to prevail, if it did not the complainants will be entitled to the decree they ask.'' The deed was attacked by complainants, both as to its effect and as to the proof of the deed ; the decision of the vice-chancellor was in favor of the defendants on both points, and as to the land in dispute (tract No. 4) the direction of the opinion is that the complainants' bill must be dismissed. No decree, however, was, in fact, signed or advised by the vice-chancellor. On April 11th, 1892, the death of John C. Havens, one of the original complainants, was for the first time suggested, on the record, as having occurred on August 6th, 1889, and was proved by the affidavit of his son, Edwin H. Havens, who had, as above stated, been examined on that point by the complainants, in September, 1889. No statement was made in the affidavit as to the proceedings in the cause since the death of John C. Havens, and an *ex parte* order of revivor under the statute (*Abatement* § 5) was made on April 11th, 1892, and Margaret A. Havens and others were directed to be inserted as complainants in the suit, as becoming parties in interest in the right of John C. Havens, deceased.

The order further directed that these substituted complainants, who appeared by new counsel, might, in the language of the Abatement act (*Gen. Stat. pp. 2, 3* § *5*), " make such amend-

ment in the bill of complaint as their title or interest therein may require." The order further directed that the defendants should answer the amendments within thirty days, and that thereupon the suit proceed to issue and examination of witnesses and production of proofs, and that all other proceedings be had therein as in ordinary cases. This amendment of the bill was made by the substituted complainants on April 12th, 1892, the only amendments being (1) the erasure of the name of John C. Havens as complainant and the insertion of the substituted complainants in lieu thereof, and (2) the addition of a paragraph alleging the death of John C. Havens, intestate, on August 9th, 1889, leaving the substituted complainants as his heirs-at-law, and that his interest in the land descended to them, subject to the dower of his widow, who was already a complainant as his wife. The order and amendments were served on the solicitors of the defendants (the original complainants not being served), and the Seashore Land Company answered the amendments, stating that it had no knowledge concerning the allegations contained in the amendments, and further claiming that the substituted complainants knew of the death of John C. Havens at the time and of the pendency of the suit and its objects, and allowed the cause to go to hearing and submission without notifying defendants of their rights, and that after the delay and expense it was inequitable that these complainants should further prosecute the suit. Testimony was taken by the new complainants on November 1st, 1894, after objection by defendants' solicitor. This evidence related not to the new complainants' succession to the title or interest of John C. Havens, but to the possession of the premises sought to be partitioned, and was objected to by defendants' counsel, who gave notice of motion to strike out. The cause was subsequently, and after the death of Vice-Chancellor Van Fleet, referred to me for hearing, on the application of the new complainants, and, upon the notice to the surviving original complainants and to the defendants, the cause was brought on for final hearing before me by the new complainants. The land company and the new complainants are the only parties appearing upon the hearing, the original complainants

not appearing. At the hearing the following stipulation, dated July 31st, 1895, and signed by the solicitors of the new complainants and of the answering defendants, was filed: "It is hereby stipulated that the testimony heretofore taken in the cause shall stand as valid, although taken after the death of some of the parties." At the hearing before me one witness only, Edwin H. Havens, was called to prove the death of John C. Havens and the succession to his interest of the new complainants, and also to prove the death, since the order for their admission, of Albert A. Havens, one of these new complainants, and the succession of his heirs to his interest. These are two infants who have not been made parties to the suit. The deposition of Schenck S. Havens, taken by the new complainants after the filing of the vice-chancellor's opinion, was objected to on several grounds, one being that no testimony was admissible on the hearing except that considered by the late vice-chancellor, and motion was made to strike out the evidence relating to the possession of the premises in dispute. No objection was made to the reading of the depositions which had been taken before the original submission of the cause to Vice-Chancellor Van Fleet. On this *status* of the cause the counsel for the new complainants contends that, upon the evidence taken as to the possession since the filing of the opinion, the deed from John Curtis to Joseph Lawrence, upon which the land company's claim to exclusive ownership of lot No. 4 rests, is not admissible in evidence, that the land company's claim of exclusive ownership therefore fails, and the complainants (or at least the new complainants) are entitled to a decree that they are entitled to an undivided interest in this tract No. 4 and to a partition.

The evidence as to possession was taken to meet a defect in complainants' evidence disclosed by the opinion. The deed in dispute was an ancient deed and not proved, and the vice-chancellor, after finding that the antiquity of the deed and its proper custody had been proved, referred to the question of the possession of the premises since the execution as affecting the proof of the deed, in this language: "The rule as to what evidence, in addition to proof of antiquity, and that the deed comes

from a proper source, is required to justify the admission of an ancient deed in evidence, without proof of execution, is not entirely settled in this country. The cases are entirely harmonious to this extent, that where possession of the land has accompanied the deed that fact furnishes sufficient evidence of its authenticity to justify its admission, but where possession has not accompanied the deed, the cases are not entirely agreed as to what proof, other than proof of possession, will be sufficient to justify its admission." Then, after examining the cases, he continues: " The proof in support of the authenticity of the deed on trial comes up, in my judgment, to the required standard. Such an account has been given of it as was reasonably to be expected under the circumstances of the case, and as leads naturally to the presumption that it is genuine. Neither party has shown possession. On the contrary, both admit that the land has been vacant for a century, so that possession speaks neither for nor against the deed." In the depositions taken before the original hearing, the solicitor for the complainants objected, on the ground of irrelevancy, to the evidence on the question of possession, which was offered by the defendants; and admitted subject to objection, and, so far as I find, no evidence whatever on this point was offered for the complainants. The evidence offered by the new complainants, however, shows or tends to show that the predecessors in title of complainants had possession of the tract in question by mowing the grass on it between 1830 or 1835 and 1847. It is claimed, on behalf of the new complainants, that on this new evidence the deed in question is not sufficiently proved, even on the rule laid down in the opinion, and without questioning or re-arguing any of the points covered by the opinion, they now claim that, upon the entire evidence as now presented, they are entitled to a rejection of the ancient deed and to a decree for partition as an undivided owner. The defendant land company, on the other hand, insists that upon this hearing the new evidence is not admissible, and that decree of dismissal against all the complainants, as well the new as the original, should be made. No one appears for the original complainants, nor is any claim expressly made on their

behalf, nor do I understand the claim of the new complainants to be that a decree must be entered for the original complainants on this new evidence.

*Mr. Gilbert Collins,* for the new complainants.

*Mr. George Holmes,* for the defendant Seashore Land Company.

EMERY, V. C. (after stating the facts).

The complicated questions of practice which arise in the case are due, manifestly, to the irregularity of both parties to the suit in proceeding with the cause without an order of revivor after notice, in September, 1889, of the death of John C. Havens and to the failure of both parties to call the attention of the vice-chancellor to the defect of parties before the submission of the cause. The revival of a suit which is either abated or made defective by the death of a party interested, is not a new suit, but is still the same suit, in which both parties are entitled to the benefit of all former proceedings, and, as was said by Mr. Justice Depue in *Marlatt* v. *Warwick, 4 C. E. Gr. 439 (Errors and Appeals, 1867)*, all that is open for litigation on a revival of proceedings under our Abatement act is whether the new party brought before the court has the representative character reputed to him. The amendments to the bill, authorized by the act to be made by the new parties, are (section 5) "such as his interest or title therein may require," and in the present case the only issue made on the amended bill related to the succession in title. Under the English practice the form of decree of revivor, *after reciting* the last material proceeding in the suit and the subsequent events in concise form, proceeded "that this suit, which has become abated in manner aforesaid, stand revived and be in the same plight and condition that the same was in at the time of the said abatement." *3 Dan. Ch. Pr. (6th ed.) *2538.* Both parties, under such decree, had the benefit of the previous proceedings and were bound thereby and by the whole of the proceedings, and this was the principal, if not the sole, object of the bill of revivor.

"A revivor cannot be made to operate from a particular period of the cause only, but its whole proceedings—bill, answer and orders in the cause—must stand revived, for a revivor is but a continuance of the same suit, and it cannot be a continuation of the same unless it proceeds from where the other left off." *2 Dan. Ch. Pr. *1542.*

And under the English practice, where the parties irregularly proceed with the cause after abatement or defect of necessary parties and decrees are subsequently made, an order of revivor will not be made, but the new party will be put to a supplemental bill unless all parties expressly stipulate to be bound by the previous proceedings in the cause taken after the abatement. *Griffin* v. *Morgan, L. R. 4 Ch. App. 351.* See, also, *Story Eq. Pl. 384* and cases cited. The new complainants contend (properly, I think) that they are not bound by any proceedings in the original cause taken after the death of their ancestor, but the question in this case is whether, this being admitted, the new complainants can, simply by an order of revivor, under the statute and under an amendment to the original bill, which merely stated their succession, now bring on, either for the benefit of all the complainants or of themselves alone, what is practically a new cause or rehearing of the cause, upon additional evidence taken to meet a defect in the original evidence of complainants after an adverse decision. So far as relates to the original complainants, it seems clear that they cannot themselves directly claim any benefit from such new evidence taken after their proofs had closed and their cause was submitted and decided adversely. If the proceedings, by the death of one complainant, had not merely become defective in parties, but had in law abated, so that no valid decree could be made against the survivors, in the absence of the representatives of the deceased party, then the original complainants in this cause might, perhaps, indirectly receive the benefit of opening the proofs for new evidence to meet an adverse decision, if it were regular to proceed in the cause on a mere order of revivor without a supplemental bill, a supplemental bill would seem to be necessary. *Story Eq. Pl. 384.* But where, by the death of a party complainant, the suit becomes merely defective as to parties and a

final decree in the cause valid as between the surviving parties may be made, then, as it seems to me, there is no difficulty, in point of practice, in continuing the cause as between the surviving parties to final hearing and decree, even after the death of one of several complainants. Of course the decree in such case would not bind the successors in title to the deceased, but the proceedings in the suit taken after the death would bind all the parties who could legally take them, and the successors in title of the deceased party could not, *ex mero motu* and by an order of revivor under the statute, affect the *status* of the other parties complainant or defendant, as between themselves, existing at the time of the order, or prevent their being bound by the previous proceedings.

Ordinarily, on bills of partition, the presence of all parties interested is considered necessary, and if a decree of partition is to be made all must be parties, and in the absence of any the court would not ordinarily proceed to decree. *Freem. Par.* § *463* and cases cited. But this rule is based on the principle that the court will not proceed to make an ineffectual decree, and where, as here, the parties submitted the original cause without calling attention to any defect of parties, and the court thereupon denied the partition as against the defendant land company, I see no reason why the court should not proceed to a complete decree on this decision as between the then parties to the suit, in the absence of the representatives of the deceased party. These surviving parties, in submitting the cause without calling attention of the court to the known defect of parties, both took the risk of a decree which might be made settling their rights as between themselves and without reference to the absent interests, and neither of these parties can be allowed to evade the effect of the decision by introducing, directly or indirectly, new evidence to meet defects in their evidence disclosed by the decision.

As to the entry now of a decree, as advised by the vice-chancellor in his opinion, it is not contended by the new complainants that on the case as argued before him a different decree ought not to be advised by me, or that the cause is before me as

a rehearing of the original cause between the original parties.
As between the original parties the decree should be entered as
directed in the filed opinion, and any application for rehearing
is irregular until the decree has been so entered. This is the
practice of the English court where the sitting chancellor directs
what order should be made and an entry thereof is made in the
minutes, and the order is not actually signed during his term of
office. Lord Eldon said that regularly the decree should then
be made up as directed in the minutes, to be signed by him, and
he would then consider the application for rehearing. *Taylor* v.
*Popham, 15 Ves. 73 (1808).* This is also the practice where
there has been a declaration of rights in a cause before the dis-
covery that a necessary party was omitted, who has been brought
before the court by supplemental bill. *Jenkins* v. *Cross, 15
Sim. 76.* On the hearing upon supplemental bill it was there
claimed on behalf of the new party that the first declaration was
erroneous, but it was held that the same declaration must be
made on the supplemental as in the original suit, and the new
party would be heard on a petition for rehearing, otherwise the
record in the cause would be inconsistent with itself. As to the
original complainants who survived at the time of the original
submission of the cause (not including, however, Margaret A.
Havens), I conclude, therefore, that the decree advised by Vice-
Chancellor Van Fleet dismissing the bill as to tract No. 4
should now be advised. Margaret A. Havens, as the widow of
John C. Havens, becomes one of the new complainants and must
be treated as such, although she was one of the original com-
plainants as wife of John C. Havens. Inasmuch as one of these
original complainants has died since the submission and since
the filing of the opinion, the decree in the cause should be dated
as of the date of the submission. *Tallman* v. *Wallace, 19 N. J.
L. J. 108 (Errors and Appeals, 1896).* As to the new com-
plainants the bill should be dismissed without prejudice. The
dismissal of the bill of the original complainants as against the
defendant land company leaves this defendant and the new com-
plainants as the sole owners or claimants of any interest in tract
No. 4, one of the two tracts sought to be partitioned. As to the

other tract, No. 5, the original as well as the new complainants claim undivided interests in this tract, and defendant land company, by its amended answer, claims only one-half interest therein.

It appears to have been admitted by the land company, on the hearing before Vice-Chancellor Van Fleet, that one-half interest in lot No. 5 belonged to the heirs of John Curtis, these being the original complainants and their successors in title. The persons interested or claiming interests in the two tracts, 4 and 5, are therefore so different that no single commission could issue to divide the two lots, and the bill of the new complainants, as to the partition of lot No. 4, must therefore be dismissed without prejudice. And under the decision of the court of errors and appeals, in *Slockbower* v. *Kanouse*, *5 Dick. Ch. Rep. 481* (*1892*), decided after the opinion of Vice-Chancellor Van Fleet, it would seem that the amended bill must be dismissed as one involving a dispute of legal title, and that a decree in complainants' favor would be of no avail if appealed from. The defendant land company, by their amended answer and cross-bill, set up an equitable as well as legal title under the disputed deed, and as the vice-chancellor held the deed to convey a legal title, the cross-bill must be dismissed. As to the rights of the complainants (original and new) and of the defendants in tract No. 5, the brief of counsel submitted to Vice-Chancellor Van Fleet states that there was no dispute between the parties. Nothing was said at the argument before me in reference to this tract, and I will hear counsel of all parties, as to the partition of this tract, before advising decree. The infant heirs of the new complainant, Albert A. Havens, who has died since the order of revivor, should be made parties before any hearing or decree in relation to lot No. 5.